## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SUN, et al.,                                        :
      Plaintiffs,                             :        CIVIL ACTION NO.
                                              :        3:14-CV-01098 (JCH)
      v.                                      :
                                              :
MASHANTUCKET PEQUOT                                 :
GAMING ENTERPRISE, et al.,                          :        AUGUST 3, 2015
      Defendants.                             :

### RULING RE: PLAINTIFFS' MOTION TO REOPEN (DOC. NO. 39)

## I.    INTRODUCTION

Plaintiffs Cheung Yin Sun, Long Mei Fang, and Zong Yang Li ("Plaintiffs")

brought this action against the Mashantucket Pequot Gaming Enterprise, doing

business as Foxwoods Resort Casino ("MPGE"); Anne Chen, Jeff DeClerck, Edward

Gasser, George Henningsen, Frank Leone, Michael Santagata, and Chester Sicard

(collectively referred to as the "Tribal defendants"); and Connecticut Department of

Public Safety officer Michael Robinson ("Robinson").  See Amended Civil Complaint

(Doc. No. 8) ("Am. Compl.").  The plaintiffs allege that MPGE and the Tribal defendants,

acting in concert with Robinson, acted under color of state law to perpetrate a number

of wrongs against them.  See id. at 16.  Specifically, the plaintiffs claim that MPGE, the

Tribal defendants, and Robinson committed fraud by inviting the plaintiffs to the casino

with the intent of refusing to honor the plaintiffs' potential winnings, id. ¶ 23; converted

money the plaintiffs deposited with MPGE, id. ¶ 24; falsely imprisoned the plaintiffs, id. ¶

25; seized the plaintiffs' winnings via false arrest and wrongful threat of criminal

prosecution, id. ¶ 26; forced the plaintiffs to assent to a hearing that would result in a

final, non-appealable decision regarding the ownership of the winnings, id. ¶ 27; denied

the plaintiffs independent counsel at the hearing, thereby effecting a governmental taking without due process, id. ¶ 28; and denied the plaintiffs a neutral decisionmaker at the hearing, thereby effecting a governmental taking without due process, id. ¶ 29.

On January 22, 2015, Robinson filed a Motion for Judgment on the Pleadings, with responses due by February 12, 2015. See Motion for Judgment on the Pleadings (Doc. No. 20) ("Mot. for J. on Pleadings"). On February 27, 2015, MPGE and the Tribal defendants jointly filed a Motion to Dismiss for Lack of Jurisdiction, with responses due by March 20, 2015. See Tribal Defendants' Motion to Dismiss (Doc. No. 31) ("Mot. to Dismiss"). In response to the plaintiffs' Motion to Continue, the court extended the deadline for the plaintiffs' response to the Motion to Dismiss until April 30, 2015. See Motion to Continue Plaintiffs' Response to Defendant's [sic] Motion to Dismiss (Doc. No. 34) ("Mot. to Continue")[1]; Order Granting Motion to Continue (Doc. No. 35); Order Resetting Deadlines (Doc. No. 36). The plaintiffs failed to respond to either the Motion for Judgment on the Pleadings or the Motion to Dismiss within the time ordered. Accordingly, on May 29, 2015, the court granted both Motions, entered judgment in favor of MPGE, the Tribal defendants, and Robinson, and dismissed the case. See Order Granting Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings (Doc. No. 37); Judgment (Doc. No. 38).

On June 3, 2015, the plaintiffs filed a Motion to Reopen. See Plaintiff's [sic] Motion to Reopen Suit (Doc. No. 39) ("Mot. to Reopen"). Along with the Motion to

---

[1] The Motion to Continue is confused, to say the least. Although the Motion was filed and signed by the plaintiffs' attorney and, despite the fact that the Motion seeks a continuance to respond to the Motion to Dismiss that was filed by the defendants, the Motion is titled: "Defendant's Motion For Extension of Time to Respond to Plaintiff's Motion to Dismiss." Further, in the body of the Motion, it states that the "defendant is requesting a 30 day continuance to respond to Plaintiff's motion dated March 20, 2015." Not only was it the plaintiffs who were seeking a continuance, but there was no motion dated March 20, 2015. The defendants' Motion to Dismiss was dated February 27, 2015.

Reopen, the plaintiffs also filed a response to the Motion to Dismiss.  <u>See</u> Plaintiff's [sic] Reply and Memorandum to Tribal Defendants' Motion to Dismiss (Doc. No. 40) ("Pls.' Reply")[2].  Although in the Motion to Reopen the plaintiffs indicated that they were asking the court to consider the plaintiffs' reply to both the Motion to Dismiss and the Motion for Judgment on the Pleadings, the reply memorandum submitted by the plaintiffs does not address the Motion for Judgments on the Pleadings or the arguments Robinson made in his memorandum in support of the Motion.

On June 4, 2015, the plaintiffs moved to dismiss MPGE as a defendant, and MPGE did not oppose.  <u>See</u> Plaintiff's [sic] Motion to Dismiss the Mashantucket Pequot Gaming Enterprise, DBA Foxwoods Resorts Casino as a Defendant (Doc. No. 41).  In the interim, MPGE and the Tribal defendants filed a Memorandum in Opposition to the Motion to Reopen.  <u>See</u> Tribal Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Reopen (Doc. No. 42) ("Opp'n to Mot. to Reopen").

For the following reasons, the plaintiffs' Motion to Reopen is denied.

## II.    FACTUAL BACKGROUND

This action arises out of events that allegedly occurred over a roughly week-long period in late December, 2011, when the plaintiffs visited the Foxwoods Resorts Casino. The three plaintiffs deposited $1,600,000 of shared money with MPGE in order to play a game called Mini-Baccarat.  <u>See</u> Am. Compl. ¶ 11.  The plaintiffs then went on to accrue approximately $1,148,000 in chips (in addition to the original $1,600,000 deposit) using

---

[2] The plaintiffs' Reply addressed the Tribal defendants' substantive arguments in favor of dismissal – namely, that the court lacked both subject matter jurisdiction, <u>see</u> infra § IV.B.i, and personal jurisdiction, <u>see</u> infra § IV.B.ii.  Accordingly, the court functionally treats the Motion to Dismiss as joined, thereby allowing the court to address both the Tribal defendants' substantive arguments in favor of dismissal, and the plaintiffs' arguments against dismissal, in connection with the court's consideration of whether the plaintiffs have a meritorious claim.

a strategy colloquially known as "edge-sorting."  Id.  When the plaintiffs first tried to

redeem their chips for cash, MPGE notified them that they could not do so immediately

because it was a public holiday.  Id. ¶ 12.  After the plaintiffs waited for three days in

their hotel rooms, MPGE staff and Robinson came to the plaintiffs' hotel room, where

Robinson informed the plaintiffs that MPGE had informed him that the plaintiffs had

been cheating.  Id.  Robinson then asked the plaintiffs to return the $1,148,000 in chips.

Robinson allegedly returned to the plaintiffs' hotel room a few hours later and informed

them that, although he did not believe they had been cheating, he could not force

MPGE to pay the plaintiffs and they would need to make a formal complaint to MPGE or

file a civil lawsuit.  Id.  Meanwhile, MPGE allegedly froze the $1,600,000 the plaintiffs

had deposited with MPGE.  Id. ¶ 15.

     The plaintiffs and MPGE subsequently entered into a formal agreement whereby

MPGE agreed to return the $1,600,000 the plaintiffs had deposited and the plaintiffs

agreed to submit their claim regarding the $1,148,000 in chips to the Mashantucket

Pequot Tribal Nation Gaming Commission ("MPTNGC") Inspection Division.  Id.  The

Agreement provided that the MPTNGC had the authority to render a final, non-

appealable decision regarding the ownership of the $1,148,000 in chips.  The Inspection

Division concluded that the plaintiffs "violated rules and regulations governing gaming at

MPGE and therefore are not entitled to the chips that were 'won' while wagering at the

game of Mini Baccarat."  Id. Ex. A.  After a de novo Appeal Hearing before the full

MPTNGC, the decision not to award the plaintiffs the winnings was affirmed.  Id. Ex. B.

## III.   LEGAL STANDARD

     The plaintiffs seek to reopen the case pursuant to Rule 60(b) of the Federal

Rules of Civil Procedure.[3]  "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances."  Xiu Feng Li v. Hock, 371 Fed.Appx. 171, 175 (2d Cir. 2010) (internal quotation marks omitted).  "In order to grant Rule 60(b) relief, the [c]ourt must find that (1) the circumstances of the case present grounds justifying relief and (2) the movant possesses a meritorious claim in the first instance."  Jolin v. Casto, 238 F.R.D. 48, 50 (D. Conn. 2006) (internal quotation marks omitted).  Because "strong public policy favors resolving disputes on the merits . . . all doubts should be resolved in favor of" the party seeking relief under Rule 60(b).  Id. (internal quotations marks, citations, and alterations omitted).

The "circumstances of the case" relevant to the first inquiry under Rule 60(b) "include prejudice to the adversary, the length of the delay, the reason for the error, the potential impact on the judicial proceedings, whether it was in the reasonable control of the movant, and whether the movant acted in good faith."  Id. (internal quotation marks omitted).

A claim is meritorious "so long as it is sufficiently grounded in law so as to give the fact finder some determination to make."  Id.; cf. Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (where a defendant seeks relief under Rule 60(b), "the defense need not be ultimately persuasive at this stage" to constitute a meritorious defense – it need only "give the factfinder some determination to make." (internal quotation marks omitted)).

---

[3] Although in the Motion to Reopen the plaintiffs seek relief under Rule 6(b)(B) of the Federal Rules of Civil Procedure, see Mot. to Reopen at 3-4, plaintiffs' counsel clarified at oral argument that the plaintiffs were seeking relief under rule 60(b).

**IV.    DISCUSSION**

A.  <u>Grounds Justifying Relief – Excusable Neglect</u>

Courts look to four factors when assessing excusable neglect claims: "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."  <u>Padilla v. Maersk Line, Ltd.</u>, 721 F.3d 77, 83 (2d Cir. 2013).  Further, the Second Circuit "focuses closely" on the third factor – whether the delay was within the movant's reasonable control.  <u>Id.</u>

The conduct that the plaintiffs attempt to couch as the product of excusable neglect resulted from, <u>inter alia</u>: miscommunication between the plaintiffs' two attorneys; the attorneys' heavy caseloads; the denial of the out-of-state attorney's <u>pro hac vice</u> application and his subsequent alleged inability to access the docket through the CM/ECF website; the abrupt departure of local counsel's administrative staff from his law firm; and local counsel being on his honeymoon.  <u>See</u> Mot. to Reopen at 2-3.

The court notes, without deciding, that circumstances such as these are not the type that generally justify relieving a party from a final judgment on the basis of excusable neglect.  This is because much of the neglect was entirely within the movant's control.  For example, although the court did deny the out-of-state attorney's <u>pro hac vice</u> application, it was denied without prejudice to renew.  <u>See</u> Order Denying <u>Pro Hac Vice</u> Application (Doc. No. 28).  Yet, for no apparent reason, the out-of-state counsel never refiled a corrected <u>pro hac vice</u> application.  Further, even if out-of-state counsel was not receiving automatic notifications of docket activity because he was not

admitted pro hac vice, nothing prevented said counsel from manually monitoring the docket through PACER.  Further yet, once the out-of-state counsel's pro hac vice application was denied, local counsel was on notice that perhaps his co-counsel would not be receiving automatic notifications.  Thus, even if the court credits the plaintiffs' assertion that the out-of-state attorney was supposed to be the lead attorney and he missed the deadlines because he did not have access to CM/ECF, the out-of-state counsel had alternative ways to access the docket and it was also within the reasonable control of the plaintiffs' local attorney to perform a minimal amount of case management and communicate to the lead attorney that deadlines were approaching.

Obviously, neither of the plaintiffs' attorneys adequately kept themselves abreast of the court's deadlines, which resulted in the plaintiffs failing to respond to the Motion to Dismiss and the Motion for Judgment on the Pleadings in time.  As noted earlier, the plaintiffs claim that their out-of-state counsel, who was supposed to be the lead counsel on the case, erroneously believed that the response to the Motion to Dismiss was due on May 20, 2015, rather than on the actual due date of April 20, 2015.  Even assuming that this misapprehension constituted a legitimate reason for missing the April 20 deadline, the plaintiffs also missed the May 20 deadline they believed the court had set. The plaintiffs only submitted their Motion to Reopen on June 3, 2015, and this was after the court entered judgment in favor of the Tribal defendants and Robinson on June 1, 2015.  The plaintiffs did nothing between May 20 and June 3 to alert the court that they had missed the deadline that they thought the court had imposed, nor did they move for a continuance as the deadline approached, or shortly after it passed.  Furthermore, the plaintiffs also missed the deadline to respond to the Motion for Judgment on the

Pleadings, which was set for February 12, 2015, and was never continued.  See Doc.

No. 20.  This deadline came and went before the plaintiffs' out-of-state counsel even

submitted his pro hac vice application on February 16, 2015, so there is no way that the

plaintiffs can argue that they missed that deadline because the out-of-state counsel's

application was denied.

Additionally, as for the attorneys' heavy caseloads, the Second Circuit "has

rather consistently refused to relieve a client of the burdens of a final judgment entered

against him due to the mistake or omission of his attorney by reason of the latter's . . .

inability to efficiently manage his caseload."  U.S. v. Cirami, 535 F.2d 736, 739 (2d Cir.

1976); see also Vaden v. CT, 557 F.Supp.2d 279, 293 (D. Conn. 2008).

Although the plaintiffs' excusable neglect argument is tenuous, at best, because

the court ultimately concludes that the plaintiffs do not possess a meritorious claim, see

infra § IV.B, the court does not decide whether "the circumstances of the case present

grounds justifying relief" based on the plaintiffs' counsel's excusable neglect.

B.  Meritorious Claim

The plaintiffs seek relief under section 1983 of title 42 of the United States Code,

claiming that the "[d]efendants, acting under color of state law, deprived plaintiffs of their

civil rights and in so doing are liable for tort-like causes of action for fraud, conversion,

false imprisonment, false arrest and governmental taking of their private property

without due process of law in violation of the Fifth and Fourteenth Amendments of the

U.S. Constitution."  Am. Compl. at 2.  The Tribal defendants, on the other hand, argue

that the court has neither subject matter jurisdiction to adjudicate the suit nor personal

jurisdiction over the Tribal defendants.  See Memorandum in Support of Motion to

Dismiss 1 (Doc. No. 31 Ex. 1) ("Mem. in Supp. of Mot. to Dismiss").  Robinson argues,

inter alia, that the court does not have personal jurisdiction over him.  See Mot. for J. on

Pleadings at 1.

        i.     Subject Matter Jurisdiction – Tribal Defendants

"Determining the existence of subject matter jurisdiction is a threshold inquiry and

a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

[of the Federal Rules of Civil Procedure] when the district court lacks the statutory or

constitutional power to adjudicate it."  Caires v. JP Morgan Chase Bank, 745 F.Supp.2d

40, 44 (D. Conn. 2010) (internal quotation marks omitted).  Accordingly, if the court

determines that it does not possess subject matter jurisdiction over the claim, then there

is no determination for the factfinder to make and the plaintiffs' claim is not meritorious.

The Tribal defendants argue that the court lacks subject matter jurisdiction

because they are protected by tribal sovereign immunity.  See Mem. in Supp. of Mot. to

Dismiss at 15-17.  Dismissal for lack of subject matter jurisdiction would be the

appropriate course of action if indeed the Tribal defendants enjoy tribal sovereign

immunity.  See Chayoon v. Chao, 355 F.3d 141, 142-43 (2d. Cir. 2004) (affirming

district court's dismissal for lack of subject matter jurisdiction because defendants were

protected by tribal sovereign immunity).

The Mashantucket Pequot Tribe is a "federally recognized Indian tribe" entitled to

tribal sovereign immunity.  See id. at 143.  Tribal sovereign immunity extends to "entities

that are agencies of the tribe," including MPGE d/b/a Foxwoods Resort Casino.  See

Worrall v. Mashantucket Pequot Gaming Enter., 131 F.Supp.2d 328, 330-31 (D. Conn.

2001).  Tribal sovereign immunity also "extends to all tribal employees acting within their

representative capacity and within the scope of their official authority." Bassett v. Mashantucket Pequot Museum and Research Ctr. Inc., 221 F.Supp.2d 271, 278 (D. Conn. 2002). The following Tribal defendants are clearly MPGE employees: Anne Chen (Vice President of Asian Marketing for Foxwoods); Jeff DeClerck (Senior Security Investigator for Foxwoods); Frank Leone (Director of Table Games for Foxwoods); George Henningsen (Chairman of the Mashantucket Pequot Tribal Nation Gaming Commission); Chester Sicard (Director of Inspection Division of the Mashantucket Pequot Tribal Nation Gaming Commission). See Am. Compl. at 4, 9, 16. Tribal defendants Edward Gasser and Michael Santagata are both legal counsel for MPGE. See id. at 23. Although no binding authority, either from the Second Circuit or the Connecticut Supreme Court, has determined whether attorneys representing a party cloaked by tribal sovereign immunity share in that immunity, this court agrees that "a tribe's attorney, when acting as a representative of the tribe and within the scope of his authority, is cloaked in the immunity of the tribe just as a tribal official is cloaked in that immunity." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 91 (S.D.N.Y. 2002) (citing additional support).

The plaintiffs argue that the Tribal defendants are not protected by tribal sovereign immunity because, "Plaintiffs are suing them for violating 42 U.S.C. § 1983 by acting in their individual capacities in concert with a state police officer." Pls.' Reply at 3. Further, the plaintiffs argue that, "as a matter of U.S. constitutional law, individual tribe members cannot act in concert with a state police officer to deprive someone's rights 'under color of state law' and it be an official act of the tribe entitled to sovereign immunity." Id. at 4. In support of this argument, the plaintiffs rely heavily on Evans v.

10

McKay, 869 F.2d 1341 (9th Cir. 1989), where the court stated that, "[i]f appellants are able to prove that the individual tribal defendants acted in concert with the police defendants, whose actions we have here held to be 'under color of state law,' their actions cannot be said to have been authorized by tribal law." Id. at 1348 n.9. Additional support for the plaintiffs' argument can be found in Wallet v. Anderson, 198 F.R.D. 20 (D. Conn. 2000), where the court, citing Evans, stated, "[t]he allegations specifically allege that Anderson [a tribal official] acted jointly and in concert with Delaney [a Connecticut state official] to violate the plaintiff's constitutional rights. If this allegation is proven to be true, it is conduct that cannot be within the scope of Anderson's authority." Id. at 24.

The Tribal defendants, on the other hand, argue that the plaintiffs must do more than simply assert that they are suing the tribal officials in their individual capacity to negate tribal sovereign immunity. See Mem. in Supp. of Mot. to Dismiss at 15-17. "Permitting such a description to affect tribal immunity would eviscerate its protections and ultimately subject Tribes to damages actions for every violation of state or federal law." Id. at 16 (quoting Bassett, 221 F.Supp.2d at 280). Rather, they urge the court to follow the holding in Bassett, which stated that, "a tribal official - even if sued in his individual capacity - is only stripped of tribal immunity when he acts manifestly or palpably beyond his authority." Id. (quoting Bassett, 221 F.Supp.2d at 280 (internal quotation marks and alterations omitted)).

However, the court concludes that it does not need to weigh in on this debate. Even if the court were to assume that the plaintiffs could strip the Tribal defendants of their sovereign immunity solely by alleging that they were engaged in a conspiracy with

Robinson to deprive the plaintiffs of their civil rights, at the threshold the plaintiffs would still need to allege such a conspiracy.  The court, as discussed further below, concludes that the plaintiffs have failed to meet this requirement.

To allege a section 1983 conspiracy claim that survives a motion to dismiss for failure to state a claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cty. Of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).  As for the formulation of an agreement between the purported co-conspirators, there must be "a meeting of the minds between the private and state actors such that they had been 'jointly engaged' in a plan to deprive [the plaintiff] of any rights." Tornheim v. Eason, 175 Fed.Appx. 427, 429 (2d Cir. 2006).  As with any conspiracy, the agreement can be either "express or tacit." See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (addressing a conspiracy allegation brought under 42 U.S.C. § 1985); Aho v. Anthony, 782 F.Supp.2d 4, 7 (D. Conn. 2011) (applying the same standard to a section 1983 conspiracy).  Further, given the fact that "conspiracies are by their very nature secretive operations," the existence of a conspiracy, and any of its requisite components, "may have to be proven by circumstantial, rather than direct, evidence." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d. Cir. 1999) (internal quotation marks omitted).  Nevertheless, "conclusory allegations of a [section] 1983 claim are insufficient." Id. (internal quotation marks omitted).

Even when the court draws all reasonable inferences in the plaintiffs' favor, as would be required when evaluating a motion to dismiss, the court concludes that the plaintiffs do not sufficiently allege that the Tribal defendants and Robinson were

engaged in a conspiracy to violate the plaintiffs' civil rights.  The Amended Complaint does not allege that Robinson and the Tribal defendants entered into an agreement, either express or tacit.  Nor can the court infer from the other factual allegations in the Amended Complaint that such an agreement existed.  At most, the Amended Complaint alleges that the Tribal defendants attempted to use Robinson to serve their interests.  See Am. Compl. ¶ 15.  Even if the court credits that assertion and finds that the Tribal defendants did attempt to use Robinson as a pawn in their scheme, that is not tantamount to Robinson and the Tribal defendants entering into agreement to violate the plaintiffs' civil rights.  See Tornheim, 175 Fed.Appx. at 429 ("Because Tornheim claims that defendants Feder and Spindel submitted to Sheriff Eason an affidavit misrepresenting Tornheim's actions – in essence, tricking the Sheriff – it cannot be said that there had been a meeting of the minds between private and state actors such that they had been 'jointly engaged' in a plan to deprive Tornheim of any rights").

The plaintiffs also suggest that the fact that Robinson allegedly kept the criminal investigation file open for over a month, while DeClerck allegedly met with various law enforcement agencies in an attempt to convince them to bring criminal charges, supports a finding of a conspiracy.  Id.  Assuming a conspiracy did exist, and that the goal of that conspiracy was to compel the plaintiffs to submit their claim of ownership of the chips to the MPTNGC, the court can understand how hanging the specter of criminal charges over the plaintiffs' heads could aid in the achievement of that goal.  However, the plaintiffs do not plead any factual assertion, even circumstantial, that connects Robinson's act of keeping the file open to DeClerck's act of trying to convince law enforcement to bring criminal charges.  At most, the plaintiffs plead that that these

13

acts occurred simultaneously, but that alone is insufficient to permit the inference that Robinson and DeClerck's actions were somehow connected.  The court cannot infer that Robinson and the Tribal defendants entered into an agreement based on these two occurrences.[4]

Accordingly, the court concludes that the plaintiffs have not alleged a conspiracy to violate section 1983 under color of state law.  Because they have not, the court further concludes that the Tribal defendants would be immune from suit based on tribal sovereign immunity, under either the <u>Bassett</u> or <u>Wallet</u> standard.  As a result, the court would lack subject matter jurisdiction to adjudicate the plaintiffs' claim against the Tribal defendants, thereby rendering it unmeritorious.

ii.    <u>Personal Jurisdiction</u>

Both the Tribal defendants and Robinson claim that the court lacks personal jurisdiction over them, which, if true, would render the plaintiffs' claim unmeritorious.  If the court lacks personal jurisdiction over the Tribal defendants and Robinson, it would be required to dismiss the case against them.  <u>See</u> <u>Davis v. Mara</u>, 587 F.Supp.2d 422, 427-28 (D. Conn. 2008).  The court would lack personal jurisdiction over the Tribal defendants and Robinson if they were not properly served.  <u>See</u> <u>id.</u>  Under such circumstances, there would be no issue for the factfinder to determine, and the plaintiffs' claim would be deemed unmeritorious.

---

[4] Further, the plaintiffs have failed to allege facts stating a section 1983 claim against Robinson alone.  Even when all reasonable inferences are drawn in the plaintiffs' favor, the Amended Complaint alleges, at most, that Robinson: rudely informed the plaintiffs that the Tribal defendants believed they had been cheating; reviewed the surveillance tape and concluded that he did not personally believe that the plaintiffs had been cheating; told the plaintiffs that he could not force Foxwoods to redeem the chips; opened an investigation report and kept it open for over a month.  <u>See</u> Am. Compl. ¶¶ 12, 15.  These factual allegations are insufficient to support a section 1983 claim.  Nor can the plaintiffs allege that Robinson engaged in malicious prosecution because no criminal charges were ever brought against the plaintiffs.  <u>Id.</u> ¶ 9.

The Tribal defendants argue that they were never properly served.  See Mem. in Supp. of Mot. to Dismiss at 6-9.  The plaintiffs argue that the Tribal defendants were served pursuant to the waiver of process provisions of Rule 4(d) of the Federal Rules of Civil Procedure.  See Pls.' Reply at 7-8.  Specifically, they argue that they "served process by way of U.S. mail upon [Tribal] Defendants at their known place of employment."  Id. at 8.

"Rule 4(d) excuses formal service of process when a waiver is executed by the defendant, returned to the plaintiff, and filed with the court.  Under this alternative procedure, service is deemed to have taken place upon the filing of the waiver form." Moss v. Wyeth, Inc., 872 F.Supp.2d 154, 159 (D. Conn. 2012).  A plaintiff who does not file the waiver of service form has not "formally completed the procedure contemplated under Rule 4(d)."  Id.  Further, "although Rule 4(d)(2) imposes upon the defendant a duty to waive service, sending a waiver through the mail in lieu of actual service does not satisfy Rule 4 unless the defendant actually executes the waiver."  Chappetta v. Soto, 453 F.Supp.2d 439, 443 (D. Conn. 2006).  In the case at bar, there is no record that the Tribal defendants ever executed the waiver or returned it to the plaintiffs, or that the plaintiffs filed an executed waiver form with the court.  Accordingly, the court concludes that the Tribal defendants never waived service.

Alternatively, the plaintiffs argue that "[i]n filing their answers to the complaint, Defendants have in fact waived personal service of process . . . "  Pls.' Reply at 8.  This argument is unavailing on multiple levels.  Technically speaking, the Tribal defendants never filed an answer either to the plaintiffs' Complaint or Amended Complaint.  Rather, on the date that a response to the Amended Complaint was due, the Tribal defendants

filed their Motion to Dismiss.  Further, Rule 12(h)(1) of the Federal Rules of Civil

Procedure articulates when a lack of personal jurisdiction, insufficient process, or

insufficient service of process defense will be deemed waived.  That section states:

> (h) Waiving and Preserving Certain Defenses.
>
>> (1) *When Some Are Waived.* A party waives any defense
>> listed in Rule 12(b)(2)-(5) by:
>>
>>> (A) omitting it from a motion in the circumstances
>>> described in Rule 12(g)(2); or
>>>
>>> (B) failing to either:
>>>
>>>> (i) make it by motion under this rule; or
>>>>
>>>> (ii) include it in a responsive pleading or in an
>>>> amendment allowed by Rule 15(a)(1) as a matter
>>>> of course.

Fed. R. Civ. P. 12(h)(1).  The Tribal defendants raised their lack of personal jurisdiction /

insufficiency of service of process defense in their Motion to Dismiss, which was the first

responsive pleading they filed with the court.  Thus, they did not waive the right to

assert this defense, and the court concludes that they were never served.

Robinson also argues that he was never served.  <u>See</u> Mot. For J. on Pleadings at

1.  The plaintiffs assert that Robinson could be served through the Connecticut

Department of Public Safety.  <u>See</u> Am. Compl. ¶ 9.  Robinson, while conceding both

that the plaintiffs did send a copy of the Summons and the Complaint to his work

address, and that he received these documents, argues that this does not satisfy the

requirements for service of an individual under either the Federal Rules of Civil

Procedure or Connecticut law.  See Memorandum in Support of Motion for Judgment on the Pleadings 14 (Doc. No. 22).  The court agrees with Robinson.

Rule 4(e) of the Federal Rules of Civil Procedure, which governs service of an individual, allows service to be made either by complying with state law regarding service, or by doing any of the following: (1) delivering a copy of the summons and complaint directly to the individual; (2) leaving a copy of the summons and complaint at the individual's home; or (3) delivering a copy of the summons and complaint to an agent authorized to receive service for the individual.  See Fed. R. Civ. P. 4(e).  As for Connecticut law, section 52-57 of the Connecticut General Statutes provides that service upon an individual can be made either by personally delivering the necessary documents to the individual, or by leaving them at his home.  See C.G.S.A. § 52-57(a).  The plaintiffs clearly did not serve Robinson in accordance with any of these options.  Instead, all they did was mail the Summons and Complaint to Robinson's work address.  Accordingly, the court concludes that Robinson was never properly served.

The plaintiffs also argue that, in the event the court concludes that they did not serve the Tribal defendants, they should be "entitled to issue process again and begin the suit anew."  Pls.' Reply at 8.  Rule 4(m) of the Federal Rules of Civil Procedure provides courts with the procedure for situations where a plaintiff has not served the defendant within 120 days after the complaint is filed – which is the case here.  "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Or, if the plaintiff cannot show good cause, "the court either – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be

made within a specified time." Id.; see also Counter Terrorist Group U.S. v. N.Y. Magazine, 374 Fed.Appx. 233, 234 (2d Cir. 2010) ("Although a district court must grant an extension where good cause is shown, it may also grant a discretionary extension absent such showing").

The plaintiffs have not demonstrated good cause for failing to serve the Tribal defendants or Robinson.  "While courts generally hold that an attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause for the purposes of the Rule 4(m), courts also suggest that excusable neglect can constitute good cause." Jackson v. CT, 244 F.R.D. 144, 145 (D. Conn. 2007) (internal quotation marks, citations, and alterations omitted) (emphasis in the original).  Further, "[c]ourts generally consider three factors to determine whether good cause exists: (1) whether the delay resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether the plaintiff has moved for an enlargement of time to effect service under Rule 6(b) of the Federal Rules of Civil Procedure." Pellela v. Herron, Civil No. 3:06CV1484(AWT), 2008 WL 2468526, at *2 (D. Conn. June 17, 2008).

The plaintiffs have offered no argument that a good cause existed for their failure to serve the Tribal defendants or Robinson.  On the other hand, although the Tribal defendants and Robinson can only speculate as to how they have been prejudiced by the plaintiffs' failure to serve them, the other two factors militate in their favor.  The plaintiffs never moved for an extension of time to serve the Tribal defendants or Robinson pursuant to Rule 6(b).  Nor have the plaintiffs demonstrated that the delay resulted from inadvertence, or that they made a reasonable effort to effect proper

service.  Rather, the plaintiffs were informed by both the Tribal defendants and by Robinson that neither party had been served, and yet the plaintiffs did nothing to remedy this situation.  In a Motion to Modify Scheduling Order filed with the court on December 30, 2014, in which the Tribal defendants sought an extension to file their Motion to Dismiss, the Tribal defendants stated that they were not served with either the Complaint or the Amended Complaint.  <u>See</u> Motion to Modify Scheduling Order ¶ 1 (Doc. No. 15).  Similarly, one of the grounds underlying the Motion for Judgment on the Pleadings, which was filed on January 22, 2015, was insufficient service of process. <u>See</u> Mot. for J. on Pleadings ¶ a.  Despite being put on notice, the plaintiffs took no steps to properly serve the Tribal defendants or Robinson.  The court concludes that the plaintiffs have not shown good cause to excuse their failure to serve the Tribal defendants or Robinson.

The court "<u>may</u> grant an extension in the absence of good cause, but it is not required to do so." <u>Zapata v. City of N.Y.</u>, 502 F.3d 192, 197 (2d Cir. 2007) (emphasis in the original).  Notably, the plaintiffs have not moved for an extension of time to effect service.  Rather, they contested the legal basis of the Tribal defendants' Motion to Dismiss for lack of personal jurisdiction based on a failure to effect service.  Under such circumstances, the plaintiffs' only relief under Rule 4(m) would be if the court <u>sua sponte</u> granted them an extension of time to serve the defendants, which the court is not obligated, or in this case inclined, to do.  <u>See, e.g.</u>, <u>Davis</u>, 587 F.Supp.2d at 429 (granting motion to dismiss and noting that: "Plaintiffs here have neither sought an extension of time, nor demonstrated good cause for such an extension. Instead, Plaintiffs have chosen to contest the legal basis of Defendants' motion").

19

Because the plaintiffs failed to serve the Tribal defendants and Robinson, and because they have not moved for an extension of time to serve them, the court never had personal jurisdiction over the Tribal defendants or Robinson.  Accordingly, even if the court were to conclude that the circumstances of the case presented grounds of excusable neglect justifying relief under Rule 60(b), which the court does not, the plaintiffs would not possess a meritorious claim.

## V.    CONCLUSION

For the foregoing reasons, the plaintiffs' Motion to Reopen (Doc. No. 39) is **DENIED.**  As a result, the plaintiffs' Motion to Dismiss Foxwoods as Defendant (Doc. No. 41) is **TERMINATED** as moot.

**SO ORDERED**.

Dated at New Haven, Connecticut this 3rd day of August 2015.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

20